731 So.2d 1249 (1999)
THE FLORIDA BAR, Complainant,
v.
William B. FREDERICKS, Jr., Respondent.
No. 91,472.
Supreme Court of Florida.
February 25, 1999.
Rehearing Denied May 11, 1999.
John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, Tallahassee, Florida, and Jan K. *1250 Wichrowski, Bar Counsel, Orlando, Florida, for Complainant.
Robert H. Gray, Bartow, Florida, for Respondent.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by William B. Fredericks, Jr. We have jurisdiction. Art. V, § 15, Fla. Const. We approve the report.
On September 29, 1997, the Bar filed a complaint against William B. Fredericks, Jr. alleging that: (1) he had been retained by Peter Winston in 1984 to represent Winston in a wrongful termination suit; (2) Winston had paid Fredericks a retainer of $1100; and (3) Fredericks had never filed suit on Winston's behalf but had falsely informed Winston that the case was settled in his favor at mediation and that Winston was to receive a monetary award. Accordingly, the Bar's complaint charged that Fredericks had violated Rule 4-8.4(c) of the Rules Regulating The Florida Bar by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.
On March 6, 1998, the case was heard before a referee. At the hearing, only Fredericks, Winston, Winston's wife, and Winston's mother testified. Generally, Winston testified that Fredericks had led him to believe that he had filed both a state and a federal court wrongful termination action on his behalf, that a default judgment of $25,000 had been entered in his favor in the state action, and that the federal case had been settled at mediation for a lump sum payment of $57,000 and then $20,000 a year for the next ten years. Winston also testified that over a period of approximately eleven years, Fredericks had given him a series of excuses as to why he had not received either of the awards. Fredericks denied all of this.
Both Winston and Fredericks agreed that Fredericks had represented Winston in other matters over the years and that Winston had not paid Fredericks for these services. Winston testified that he and Fredericks had agreed that Fredericks would be paid out of the award and settlement from the wrongful termination suits. Fredericks testified he did this because they were friends. Neither Fredericks nor Winston were able to provide written documentation supporting their version of events. The testimony of Winston's mother and wife testimony corroborated his testimony to a limited extent.
After the hearing, the referee made findings of fact essentially in accordance with the allegations in the complaint and Winston's testimony. Additionally, the referee stated:
What is even more incredible is that there is not one writing between either of the parties to memorialize anything. It is hard to see the rationale or logic in Fredericks' house of cards. It inevitably had to crumble. It was so preposterous that in light of Winston's lack of documentary evidence, the allegation could easily be dismissed. There are however two pieces of evidence that corroborate Winston's allegation. First and foremost is Fredericks' disciplinary history (Bar Exhibit 2) that demonstrates that this type of conduct is not isolated, that other clients have made similar accusations against Fredericks. The other factor is Fredericks' willingness to handle other legal matters for Winston without compensation. This is consistent with the position taken by Winston that the fees were to be collected from the phantom settlement.
Finally, the referee found that Fredericks failed to inform Winston that he would not be handling the wrongful termination lawsuit or advise him of the statute of limitations, and did not keep Winston "properly informed as to the true status of the case."
After making these findings, the referee recommended that Fredericks be found guilty of violating not only Rule 4-8.4(c) but also rules 4-1.3 and 4-1.4. For these violations, the referee recommended that *1251 Fredericks be suspended for six months. Fredericks now seeks review of the referee's report and recommendation.

I. Findings of Fact
Fredericks raises several challenges to the referee's findings of fact. First, he argues that the referee's factual findings were based almost entirely on the testimony of the complaining witness, Peter Winston, and that Winston's testimony was inconclusive, and constantly impeached and, therefore, incapable of providing the necessary quantum of proof to convict him. See Florida Bar v. Rayman, 238 So.2d 594, 597 (Fla. 1970)(stating that evidence sufficient to sustain a charge of attorney misconduct where the attorney has denied the act under oath "must be clear and convincing and that degree of evidence does not flow from the testimony of one witness unless such witness is corroborated to some extent either by facts or circumstances")(quoting In re Martin, 67 N.M. 276, 354 P.2d 995, 998 (1960)); State ex rel. Florida Bar v. Junkin, 89 So.2d 481 (Fla. 1956)(holding that testimony of complaining witness was insufficient to support finding of misconduct and recommendation of disbarment where testimony was evasive and inconclusive and did not establish the relevant facts with any degree of certainty).
However, while Fredericks argues that Winston's testimony was evasive, inconclusive, and inconsistent, he does not specifically point out any important deficiencies in the testimony. Further, a review of Winston's testimony reveals no major inconsistencies. In fact, with the exception of some confusion regarding specific dates, Winston's testimony was surprisingly detailed considering the lapse of time involved. Thus, Junkin and Rayman are inapplicable, and Fredericks' challenge to the referee's findings essentially boils down to an argument that the referee should not have credited Winston's testimony over Fredericks' own testimony to the contrary. However, "[t]he referee is in a unique position to assess the credibility of witnesses, and his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect." Florida Bar v. Thomas, 582 So.2d 1177, 1178 (Fla. 1991); see also Florida Bar v. Hayden, 583 So.2d 1016, 1017 (Fla. 1991)(stating that where testimony conflicts, referee is charged with responsibility of assessing credibility based on demeanor and other factors). Here, we find no such evidence and therefore defer to the referee's assessment of the credibility of the witnesses.
Fredericks next argues that the referee erred in considering his prior discipline as evidence that he committed the acts alleged in this case, rather than considering it only for the purposes of determining an appropriate sanction. However, Fredericks failed to object to this evidence when it was introduced and, instead, explained the circumstances surrounding the discipline. More importantly, although the use of this evidence in this manner is somewhat analogous to the use of similar fact evidence to prove guilt in a criminal context, the referee in bar discipline proceedings is not bound by the technical rules of evidence and is "authorized to consider any evidence ... deem[ed] relevant in resolving the factual question." Florida Bar v. Rood, 620 So.2d 1252, 1255 (Fla. 1993); see also Florida Bar v. Vining, 707 So.2d 670, 673 (Fla. 1998). In addition, the referee's findings were not based solely upon this evidence, and his report makes clear that he used this evidence only as corroboration of Winston's testimony. Therefore, even if there was error, it was harmless, especially in light of the fact that Winston's mother and wife also gave testimony partially corroborating his version of events.
Fredericks also argues that the referee erred in finding that his representation of Winston in other matters without pay indicated that he committed the acts alleged. This argument is without merit. Although such circumstantial evidence *1252 alone may be insufficient to prove guilt unless it is inconsistent with any reasonable hypothesis of innocence, see Davis v. State, 90 So.2d 629, 631 (Fla. 1956), the referee's findings here were not based solely on this evidence. Rather, it was viewed only as corroborating evidence of Winston's direct testimony. The referee's report specifically stated his view that this evidence "was consistent with the position taken by Winston that the fees were to be collected from the phantom settlement."
Finally, Fredericks points to his testimony that he referred Winston to two other attorneys to review the merits of the wrongful termination claim. Fredericks argues that this evidence shows his innocence because, if he had actually committed the acts alleged, it would not make sense for him to refer Winston to other attorneys who would likely discover and reveal his misdeeds. He argues that the referee arbitrarily rejected this unrebutted testimony and erred in doing so.
This claim is also completely without merit. First, this evidence was not unrebutted. Although both agreed that Fredericks had referred Winston to other attorneys, Fredericks maintained that it was to review the merits of the wrongful termination claim, while Winston maintained that the referral was relevant to a suit over entitlement to the interest earned on the settlement in the federal case. Moreover, the referee did not reject this evidence; rather, he expressly recognized that "Fredericks did refer Winston to another lawyer" and recognized the conflicting explanations.
Accordingly, we accept the referee's findings of fact as supported by competent substantial evidence.

II. Conclusions as to Guilt

A. Rule 4-8.4(c).
The referee found that Fredericks misrepresented to his client that suits on his behalf had been filed and resolved in his favor when, in fact, nothing had been filed. Based on this, the referee found that Fredericks "did misrepresent the status of the client's matter," and recommended he be found guilty of violating Rule 4-8.4(c), prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation. "In order to find that an attorney acted with dishonesty, misrepresentation, deceit, or fraud, the Bar must show the necessary element of intent." Florida Bar v. Lanford, 691 So.2d 480, 481 (Fla. 1997); see also Florida Bar v. Cramer, 643 So.2d 1069, 1070 (Fla. 1994); Florida Bar v. Neu, 597 So.2d 266 (Fla. 1992). Fredericks argues that the referee failed to find the required element of intent and therefore erred in finding him guilty of violating this rule. We disagree.
In cases such as this one, in order to satisfy the element of intent it must only be shown that the conduct was deliberate or knowing. See Florida Bar v. Cramer, 643 So.2d 1069, 1070 (Fla. 1994)(upholding referee's recommendation that attorney be found guilty of violating Rule 4-8.4(c) where attorney knowingly and deliberately deposited legal fees into trust account in attempt to mislead IRS after receiving notice of intent to levy). Here, Fredericks essentially argues that the record does not support a finding of intent because he received no monetary benefit from the alleged misrepresentations. This argument confuses intent with motive and overlooks another possible motive-covering up his failure to file the claim after having accepted a retainer from the client. Regardless of the possible motive for Fredericks' misrepresentations, Winston's testimony supports a finding that Fredericks knowingly and deliberately made the alleged misrepresentations. Further, nothing in the record indicates that the misrepresentations were made negligently. Accordingly, we approve the referee's recommendation that Fredericks be found guilty of violating Rule 4-8.4(c).

B. Rules 4-1.3 and 4-1.4.
The Bar's complaint specifically charged that Fredericks had been retained by Winston, *1253 had accepted a retainer of $1100, and had misrepresented to Winston that a federal lawsuit had been filed and resolved in his favor at mediation when, in fact, no lawsuit had ever been filed. The complaint charged only a violation of Rule 4-8.4(c). However, in addition to his recommendation that Fredericks be found guilty of violating Rule 4-8.4(c), the referee also recommended that he be found guilty of violating rules 4-1.3 and 4-1.4 based on his finding that Fredericks failed to "ever inform Winston that he would not be handling the lawsuit or that the statute of limitations would expire if litigation were not commenced" and did not "keep Winston properly informed as to the true status of the case."
Fredericks argues that the referee's recommendation that he be found guilty of these additional rule violations is erroneous because they were not charged in the complaint. However, in Florida Bar v. Vaughn, 608 So.2d 18 (Fla. 1992), we held that an attorney could be found guilty of violating a rule not specifically charged in the complaint where the complaint alleged the actual conduct which formed the basis of the violation and, therefore, put the attorney on notice. Similarly, in Florida Bar v. Nowacki, 697 So.2d 828, 832 (Fla. 1997), we held that a referee could find instances of conduct not specifically charged in the complaint where the conduct was "clearly within the scope of the Bar's accusations" and the attorney was aware of the rules she was alleged to have violated and "the nature and extent of the charges pending against her." Accordingly, under our case law, specific findings of uncharged conduct and violations of rules not charged in the complaint are permitted where the conduct is either specifically referred to in the complaint or is within the scope of the specific allegations in the complaint.[1]
Fredericks argues that our decisions in Vaughn and Nowacki are contrary to the United States Supreme Court's decision in In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). In Ruffalo, an attorney received notice of twelve separate charges that would be raised in his disbarment proceedings, including a charge that he had solicited Federal Employers Liability Act (FELA) plaintiffs as clients through an agent. Id. at 546, 88 S.Ct. 1222. During the proceedings, the attorney and the agent testified that no solicitation had taken place and that the agent, also an employee of Baltimore and Ohio Railroad (B & O), only investigated FELA cases for the attorney. The testimony also revealed that the agent had investigated FELA cases where B & O was the defendant. Immediately after the presentation of this testimony, a new charge was added against the attorney based on his hiring the agent to investigate his own employer. Id. In its final order disbarring the attorney, the bar committee relied in part upon this new charge. Further, after the state disbarment, the Sixth Circuit Court of Appeals disbarred the attorney on the basis of only the new charge. Id. The United States Supreme Court, upon review of the circuit court's decision, held that the "absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges deprived petitioner of procedural due process." Id. at 552, 88 S.Ct. 1222.
Clearly, Ruffalo is distinguishable from Vaughn, Nowacki, and the instant case in a very important respect. The conduct in Ruffalo upon which the attorney's disbarment was ultimately based was completely unrelated to the original charge and was actually the basis of his defense to the original charge. Thus, the attorney was completely unaware that the uncharged conduct was to be questioned and had been, in essence, trapped by his defense *1254 to the original charge. Here and in Vaughn and Nowacki, although the specific conduct or specific rule violation at issue was not alleged in the original bar complaint, it was related to or was within the scope of the conduct and rule violations specifically charged.
In this case, the complaint charged Fredericks with affirmative misrepresentations regarding the supposed status of a nonexistent lawsuit. Such conduct inherently includes a failure to act with reasonable diligence and a failure to keep the client reasonably informed. Accordingly, because Fredericks was made aware of the conduct alleged by the Bar to be unethical and had the opportunity to be heard as to this conduct, there was no violation of due process.
Accordingly, we approve the referee's recommendation that Fredericks be found guilty of violating Rules 4-1.3, 4-1.4, and 4-8.4(c) of the Rules Regulating The Florida Bar.

III. Discipline
In contrast with a review of the referee's findings of fact, which should be upheld if supported by competent substantial evidence, this Court has a broader scope of review regarding discipline because it bears the ultimate responsibility of ordering the appropriate sanction; however, a referee's recommendation is presumed correct and will be followed if reasonably supported by existing case law and not "clearly off the mark." Florida Bar v. Vining, 707 So.2d 670, 673 (Fla. 1998). The conduct found by the referee in this case is very similar to that found in two prior cases where the Court imposed eight-month suspensions. See Florida Bar v. Palmer, 504 So.2d 752 (Fla. 1987)(imposing eight-month suspension where attorney falsely informed client that he had filed suit and secured court dates that case had been delayed because of change in opposing counsel, and that case had been settled out of court while client's action had been foreclosed by running of statute of limitations); Florida Bar v. Bazley, 597 So.2d 796 (Fla. 1992)(imposing eight-month suspension where attorney agreed to represent client in personal injury action and falsely informed client that suit had been filed, client had won suit, and attorney had obtained money judgment in client's favor).
Fredericks nevertheless argues that several mitigating circumstances render the referee's recommendation too severe. We find that to the extent that any of the alleged mitigating circumstances may be valid, the referee's recommendation of a six-month suspension, rather than an eight-month suspension as was imposed in Palmer and Bazley, takes those into account. Accordingly, we approve the recommended discipline.
William B. Fredericks, Jr. is hereby suspended from the practice of law for six months. The suspension will be effective thirty days from the filing of this opinion so that Fredericks can close out his practice and protect the interests of existing clients. If Fredericks notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Fredericks shall accept no new business from the date this opinion is filed until the suspension is completed. Judgment for costs in the amount of $1,467.25 is entered in favor of The Florida Bar against William B. Fredericks, Jr., for which sum let execution issue.
It is so ordered.
HARDING, C.J., SHAW, ANSTEAD, and PARIENTE, JJ., and KOGAN, Senior Justice, concur.
WELLS, J., dissents with an opinion, in which OVERTON, Senior Justice, concurs.
WELLS, J., dissenting.
I dissent because my reading of the transcript of the hearing and the referee's order causes me to conclude that there is an insufficient evidentiary basis to support *1255 the referee's finding of intent. The report of the referee does not supply such a basis. The report says:
There are however two pieces of evidence that corroborate Winston's allegations. First and foremost is Fredericks' disciplinary history (Bar Exhibit 2) that demonstrates that this type of conduct is not isolated, that other clients have made similar accusations against Fredericks. The other factor is Fredericks' willingness to handle other legal matters for Winston without compensation. This is consistent with the position taken by Winston that the fees were to be collected from the phantom settlement.
These two pieces of evidence cannot prove intent in respect to an 8.4(c) violation. That is simply too great an inferential leap to support such a determination.
Based upon the evidence in the record before the referee, I would find respondent guilty of violating Rule 4-1.4, which states:
(a) Informing Client of Status of Representation. A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) Duty to Explain Matters to Client. A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
In view of respondent's history of ethical violations, I would suspend him for a period of thirty days.
OVERTON, Senior Justice, concurs.
NOTES
[1] Conversely, we have held that a finding of an uncharged rule violation based on conduct that is not within the scope of the specific allegations of the complaint is a violation of due process. See Florida Bar v. Vernell, 721 So.2d 705 (Fla. 1998).