770 So.2d 1184 (2000)
THE FLORIDA BAR, Complainant,
v.
Allan M. ELSTER, Respondent.
Nos. SC92968, SC93090 to SC93092.
Supreme Court of Florida.
October 12, 2000.
John F. Harkness, Jr., Executive Director, and John A. Boggs, Staff Counsel, Tallahassee, Florida, and Lorraine C. Hoffmann, Bar Counsel, Fort Lauderdale, Florida, for Complainant.
Allan M. Elster, Miami, Florida, Respondent, pro se.
PER CURIAM.
In this consolidated appeal, we have for review four separate attorney discipline cases. All four cases involve Allan M. Elster's representation of clients in immigration matters. Case number SC92968 involves Elster's representation of Antonio and Joani Sabatier. The referee issued a report and recommendation in this case on March 17, 1999, finding that Elster had committed several ethical violations and recommending that he be suspended from the practice of law for sixty days. The three remaining cases, SC93090, SC93091, and SC93092, involve Elster's representation *1185 of Dominga Zavala, Modesto Vargas, and Yanique Duval, respectively. These three cases were consolidated below, and the referee issued a single report and recommendation on June 4, 1999, again finding a number of ethical violations and recommending that Elster be suspended for eighteen months. We have jurisdiction. Art. V, § 15, Fla. Const. For the reasons expressed below, we approve the referee's findings of fact, but we reject the recommended discipline and find that a three-year suspension is the appropriate sanction for Elster's collective misconduct in these four cases.

FINDINGS OF FACT

A. The Sabatier Case
In this case, Elster was retained to represent Antonio Sabatier and his daughter, Joani, before the United States Immigration Court. The Sabatiers paid Elster $400 toward a total fee of $800 for handling the entire matter, and they informed Elster that they had a court hearing scheduled for August 6, 1996. The referee found that Elster failed to file a notice of appearance on their behalf, failed to appear at the scheduled hearing, failed to accomplish any meaningful work on their behalf, effectively abandoned them and their cause of action, and failed to make any attempt to inform them that he did not intend to continue to represent them. The referee also found that both before and after the date of the hearing, the Sabatiers and their successor counsel made numerous attempts to contact Elster by phone and electronic pager, but he failed to return any of the phone calls or pages. Finally, the referee found that due to Elster's complete lack of work on the Sabatiers' behalf, he collected an excessive fee of $400. Based on these findings, the referee recommended that Elster be found guilty of violating rules 3-4.2 (violation of Rules of Professional Conduct grounds for discipline), 4-8.4(a) (lawyer shall not violate Rules of Professional Conduct), 4-1.1 (competent representation), 4-1.3 (reasonable diligence), 4-1.16(d) (protection of client's interest upon termination of representation), 4-1.4(a) (keeping client reasonably informed), and 4-1.5(a) (excessive fee) of the Rules Regulating The Florida Bar.
Elster essentially disagrees with the referee's findings of fact in the Sabatier case on the basis that they are contrary to his own testimony. However, in order to successfully challenge the referee's findings, Elster must demonstrate "that there is no evidence in the record to support [the referee's] findings or that the record evidence clearly contradicts the conclusions." Florida Bar v. Spann, 682 So.2d 1070, 1073 (Fla.1996). Elster has not met this burden.
It is clear that the referee weighed the credibility of Elster's testimony in this case and, where the evidence was in conflict, chose to credit the documentary evidence and the testimony of other witnesses over the testimony of Elster. Because the referee is in the best position to judge the credibility of the witnesses, we defer to the referee's assessment and his resolution of the conflicting testimony. See Florida Bar v. Fredericks, 731 So.2d 1249, 1251 (Fla.1999) (stating that "the referee is in a unique position to assess the credibility of witnesses, and his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect"); Florida Bar v. Thomas, 582 So.2d 1177, 1178 (Fla.1991) (same); Florida Bar v. Hayden, 583 So.2d 1016, 1017 (Fla.1991) (stating that where testimony conflicts, referee is charged with responsibility of assessing credibility based on demeanor and other factors). Accordingly, we find that there is competent substantial evidence in the record to support the referee's findings in this case.

B. The Zavala, Vargas, and Duval Cases
In the Zavala case, the referee found that Elster provided Dominga Zavala with a misleading business card, which bore the *1186 name "Immigration Verification Associates," upon which she relied to retain him to represent her in an appeal of the deportation order previously entered against her. He collected his full fee from her, filed a motion to reopen and stay her deportation, which was swiftly denied as inadequate, filed a motion for rehearing of that denial which was also denied, and then filed an emergency appeal. After filing the emergency appeal, Elster communicated with Zavala for approximately two months at the Krome Detention Center where she was being held, after which he abandoned her and failed to communicate with her despite her frequent attempts to communicate with him. Zavala was deported on November 11, 1996.
Although the referee stated that Elster's legal work for Zavala was "unprofessional, legally inadequate and possibly constituted malpractice," he found that it did not rise to the level of unethical conduct. However, the referee found that through the use of the business card and his letterhead, which also bore the name "Immigration Verification Associates," Elster violated rules 4-7.1(a) (misleading communication about lawyer's services), 4-7.2(k) (non-complying advertisement), 4-7.7(b) (trade name), 4-7.7(f) (statement that lawyer practices in partnership or other organization), and 4-8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). The referee also found that by intentionally disseminating the business card and letterhead for the purpose of financial gain, Elster violated rule 4-7.1(a) (misleading communication about lawyer's services), 4-7.2(k) (noncomplying advertisement), 4-7.7(b) (trade name), and 4-8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and that by collecting a legal fee through the use of a noncomplying advertisement, he violated rule 4-1.5(a) (fee generated by employment obtained through noncomplying advertisement). Finally, the referee found that by failing to communicate with his client for the last five months she was in the country, Elster violated rule 4-1.4(a) (keeping client reasonably informed and complying with reasonable requests for information), and 4-1.4(b) (explaining matter to client to extent reasonably necessary to permit informed decisions).
In the Vargas case, the referee found that Elster was retained to represent Modesto Vargas in an appeal of the deportation order previously entered against him. Elster assured Vargas and his family that he could stop the deportation when he knew or should have known that Vargas was ineligible for a waiver of deportation due to his drug convictions. After accepting a total fee of $2500 from the Vargas family, Elster failed and refused to take any significant action and did absolutely no work on Vargas's behalf. Once Vargas was moved from Krome Detention Center to the Manatee County Jail to await deportation, Elster failed to return most of Vargas's and his family's many calls, messages, and pages. Vargas ultimately agreed to voluntary departure from the United States.
The referee found that by failing to recognize and advise Vargas and his family that he was not eligible for a waiver of deportation and could not obtain such a waiver, Elster violated rules 4-1.1 (competent representation), 4-1.3 (reasonable diligence), 4-1.4(a) (keeping client reasonably informed), and 4-1.4(b) (explaining matter to client to extent reasonably necessary to permit informed decisions). The referee found that by accepting $2500 in fees for a case he knew or should have known had no likelihood of success as a matter of law, Elster violated rule 4-1.5(a) (excessive fee); that by assuring Vargas' family that his deportation could be stopped when he knew or should have known this to be untrue, he violated rule 4-8.4(d) (conduct involving dishonesty, fraud, deceit, or misrepresentation); and that by accepting a fee and taking little or no action on the case, he violated rule 4-1.3(reasonable diligence) and 4-1.5(a) (excessive fee). Finally, the referee found that by abandoning *1187 Vargas with no notice, without returning his file, or returning any unearned fees, Elster violated rule 4-1.16(d) (termination of representation), and that by failing to properly communicate with Vargas, he violated 4-1.4(a) (keeping client reasonably informed) and 4-1.4(b) (explaining matter to client to extent reasonably necessary to permit informed decision).
In the Duval case, the referee found that Yanique Duval, a foreign medical doctor, hired Elster to obtain for her the immigration status necessary to allow her to legally live and practice medicine in the United States. Elster informed Duval that he would obtain permanent residency status for her within three months, that her immigration request would be controlled by the requirements of section 203(b)(2) of the Immigration and Naturalization Act (INA), and that she could be granted permanent resident status by obtaining a job offer from a teaching facility or medical institution. Elster knew or should have known that this information was incorrect and that he could not, under any process or application of law, obtain permanent residency status for Duval within three months. After accepting a partial fee of $500 from Duval, Elster did no work of any kind on Duval's behalf, failed to return Duval's calls or otherwise communicate with her after the initial meeting, and failed to inform her of his change of address. Duval also gave Elster a money order in the amount of $130, made payable to the U.S. Immigration and Naturalization Service, for the express purpose of paying costs in her case. This money order was never tendered to the INS on Duval's behalf and was not returned to Duval. Elster was unable to produce or account for the money order. Based on these findings, the referee found that Elster violated rules 4-1.1 (competent representation), 4-8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), 4-1.4(a) (keeping client reasonably informed and promptly complying with reasonable requests for information), 4-1.4(b) (explaining matter to extent reasonably necessary to permit informed decision), 4-1.3 (reasonable diligence), 4-1.5(a) (excessive fee), 4-1.15(c) (property held in trust), and 1-3.3 (record bar information). Additionally, as to all three cases, the referee found that by virtue of the totality of his misconduct, Elster violated rule 3-4.2 (violation of Rules of Professional Conduct is cause for discipline) and rule 4-8.4(a) (lawyer shall not violate Rules of Professional Conduct).
In challenging the referee's findings in these cases, Elster first argues that the referee's findings in the Zavala case regarding the misleading nature of his business card are erroneous because neither Zavala nor any other member of the public testified that they were actually mislead. The only evidence necessary to prove the misleading nature of the card, however, is the card itself, which was introduced into evidence, and Elster's own admissions that the information on the card is false.
A firm name or advertisement is misleading in violation of bar rules if it is "inherently misleading to the public or ... operatively misleading." Florida Bar v. Fetterman, 439 So.2d 835, 838 (Fla.1983). Thus, even if, as Elster argues here, there is no evidence that the public has actually been misled, the name or advertisement is still in violation of bar rules if it is "inherently misleading." Id. Whether or not a particular trade name is to be deemed inherently misleading will depend upon the particular facts and circumstances of each case. Id.
Here, the card reads "Immigration Verification Associates" and also indicates that Enrique Santiago, Elster's informal Spanish interpreter, is "President." Elster admits he gave this card to Zavala before she hired him and that the information on the card is totally false-he has not and never has had any associate attorneys working for him, Immigration Verification Associates is not and never has been incorporated, and thus, Enrique Santiago is not and never has been its president. The fact *1188 that the card bears Elster's name as well does not remedy its totally false and misleading nature. Accordingly, the referee's finding that the card is misleading is correct and is supported by competent substantial evidence-the card itself and Elster's own admissions.
Elster's remaining challenges to the referee's findings in the Zavala, Vargas, and Duval cases are based simply on the fact that those findings are contrary to his own testimony or that of his Creole interpreter, Faubert Etienne. However, as in the Sabatier case, it is clear that the referee weighed the credibility of the witnesses in this case and, where the testimony was in conflict, chose to believe the testimony of the other witnesses over that of Elster and Etienne. Accordingly, because the referee is in the best position to judge the credibility of the witnesses, we defer to the referee's assessment in this regard. See Florida Bar v. Fredericks, 731 So.2d 1249, 1251 (Fla.1999); Florida Bar v. Thomas, 582 So.2d 1177, 1178 (Fla.1991); Florida Bar v. Hayden, 583 So.2d 1016, 1017 (Fla.1991). Because Elster has not met his burden to show that there is no evidence in the record to support the referee's findings or that the record evidence clearly contradicts the conclusions, we approve the referee's factual findings in the Zavala, Vargas, and Duval cases.

DISCIPLINE
In contrast with a review of the referee's findings of fact, which should be upheld if supported by competent substantial evidence, this Court has a broader scope of review regarding discipline because it bears the ultimate responsibility of ordering the appropriate sanction. See Florida Bar v. Vining, 707 So.2d 670, 673 (Fla.1998). In the Sabatier case, the referee recommended that Elster be suspended for sixty days. Separately, in the Zavala, Vargas, and Duval cases, the referee recommended that Elster be suspended for eighteen months. If each case were considered alone, we would likely agree with the recommended discipline. However, considering all four cases together, we find that a harsher discipline is required.
Due to the pattern of misconduct involved here, the Bar argues that Elster should be disbarred. However, in previous cases which have involved similar circumstances, we have imposed a long-term suspension. See, e.g., Florida Bar v. Morrison, 669 So.2d 1040 (Fla.1996) (holding that failure to act with diligence and promptness in representing client, failure to keep client reasonably informed, and failure to comply with requests for information warranted one-year suspension); Florida Bar v. Brakefield, 679 So.2d 766 (Fla.1996) (holding that failure to clarify status of representation, failure to attend depositions and hearings, failure to keep clients reasonably informed and failure to act with reasonable diligence warranted six-month suspension); Florida Bar v. Winderman, 614 So.2d 484 (Fla.1993) (holding that failing to keep clients reasonably informed and failing to do other functions warranted one-year suspension followed by one-year term of probation); Florida Bar v. Patterson, 530 So.2d 285 (Fla.1988) (finding that faulty representation of client, neglect of legal matters, failure to communicate with clients, failure to refund unearned legal fees in timely manner and abandonment of clients warranted one-year suspension); Florida Bar v. Schilling, 486 So.2d 551 (Fla.1986) (holding that neglect of responsibilities in two matters warranted six-month suspension). Most of these cases involved multiple instances of neglect and many involved similar prior misconduct.
Here, Elster's misconduct involves multiple similar violations and is very serious for two reasons. First, "[c]onfidence in, and proper utilization of, the legal system is adversely affected when a lawyer fails to diligently pursue a legal matter entrusted to that lawyer's care. A failure to do so is a direct violation of the oath a lawyer takes upon his admission to the bar." Schilling, 486 So.2d at 552. Second, the *1189 gravity of Elster's misconduct is heightened by one very important aggravating factor not present in any other case involving a pattern of conduct as serious as that in which Elster has engaged: vulnerability of the victims. The facts of these four cases, considered together, clearly show a pattern of egregious exploitation by Elster of a very vulnerable class of individuals. The facts show that Elster was misleading and victimizing foreign nationals who were unfamiliar with the legal system in this country and many of whom were in very precarious legal situations. Accordingly, based on these factors, we find that a three-year suspension is the appropriate sanction.
Allan M. Elster is hereby suspended from the practice of law for three years. The suspension will be effective thirty days from the filing of this opinion so that Elster can close out his practice and protect the interests of existing clients. If Elster notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Elster shall accept no new business from the date this opinion is filed until her is reinstated. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from Allan M. Elster in the amount of $7,790.46, for which sum let execution issue.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.