919 So.2d 425 (2006)
THE FLORIDA BAR, Complainant,
v.
Daniel Everett ABRAMS, Respondent.
No. SC04-1433.
Supreme Court of Florida.
January 12, 2006.
*426 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, The Florida Bar, Tallahassee, FL, and Lillian Archbold, Bar Counsel, The Florida Bar, Fort Lauderdale, FL, for Complainant.
Howard W. Poznanski, Boca Raton, FL, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by Daniel Everett Abrams. We have jurisdiction. See art. V, § 15, Fla. Const. We approve the referee's findings of fact, recommendations as to guilt, and recommended discipline.

*427 I. FACTS
Suzanne Akbas, a paralegal, formed a corporate entity titled U.S. Entry, Inc., to provide legal services to persons with immigration issues who were seeking to gain entry and establish lawful status in the United States. Attorney Daniel Everett Abrams was employed by U.S. Entry as "Managing Attorney" and was paid for performing "piecemeal legal work," generally at a rate of one hundred dollars per unit of work. Olga Ulershperger and Abdullah Ziya, who were husband and wife, both entered the United States in November 1999 on tourist visas and then in the spring of 2000 sought assistance from U.S. Entry in obtaining further lawful status. Ulershperger was an accomplished gymnast; Ziya was a Turkish Kurd who had suffered persecution, including torture, in his native land.
Akbas told the couple that instead of seeking political asylum based on Ziya's history of persecution, they should apply for employment visas based on Ulershperger's skills as a gymnast. The couple's applications ultimately were denied and their existing visas expired in May 2001. They did not learn of their unlawful status until March or April of 2002, after consulting with an immigration lawyer in California. That lawyer told the couple that they should not have been counseled to seek employment visas but rather should have been counseled to seek political asylum based on Ziya's persecution and torture, but that the one-year time limit for seeking asylum had expired in November 2000. The couple ultimately sought and were granted asylum under an ineffective representation exception to the one-year time limit, which prompted the present proceeding.
Based on the above matters, The Florida Bar filed a two-count complaint against Abrams, and the referee made the following findings of fact:
The [referee] finds that [Ulershperger and Ziya] were not notified of the status of their claim or of the lapse of their lawful status. As a result, they have been substantially injured and affected by the Respondent's actions. There was no follow-through by the Respondent  no telephone calls, no letters to INS, and no time records to support telephone calls made on behalf of his clients. Ulershperger and Ziya were the Respondent's clients and he was personally and professionally responsible for representing them. The evidence demonstrates that while an extension of status was done, nothing else was done and their lawful status expired in May of 2001. The [referee] finds no letters were sent to Ulershperger or Ziya informing them of the status of their case. They did not know of their unlawful status until March or April of 2002, when they obtained their file from Akbas.
The [referee] finds the Respondent violated a number of disciplinary rules. There were multiple checks paid to the Respondent by U.S. Entry. Instead of Akbas being employed by and under the Respondent's supervision, it was the other way around. Akbas was the employer and she used the Respondent's license to practice law, or obtained his signature in order to practice law. This evidentiary finding is absolutely clear and there is no contradictory evidence. The checks support the fact that there were consultation and management fees paid. The payments were not even broken down by case or client names.
The [referee] further finds it compelling that the Respondent did not meet with Ulershperger or Ziya. The Respondent had no client file, whether dictated or handwritten, and there is no basis to *428 dispute the attorney-client relationship because there is no lawyer file....
This [referee] makes a clear finding that Ulershperger and Ziya went to U.S. Entry to obtain legal entry into the United States. After the Respondent found out about their difficulties, he did nothing to help his clients and was only concerned with how the situation affected him. The Respondent allowed Akbas to have the benefit of his name as Managing Attorney. This [referee] finds the Respondent's conduct involves fraud, dishonesty, and misrepresentation.
....
This husband and wife were horribly taken in and they were very vulnerable. They came to Miami because it was the destination on their airline tickets. They had no friends or family in South Florida. They went to Akbas for assistance and the Respondent allowed Akbas to hold herself out as knowledgeable in the area of immigration law.
The referee recommended that Abrams be found guilty of violating the following Rules Regulating the Florida Bar: rule 4-1.1 (a lawyer shall provide competent representation); rule 4-5.3(a) (a person who uses certain legal titles shall work under the direction or supervision of a lawyer or authorized business entity); rule 4-5.3(b) (a lawyer shall exercise supervisory responsibility over nonlawyers employed by him or her); rule 4-5.3(c) (a lawyer shall exercise ultimate supervisory responsibility over nonlawyers who assist him or her); rule 4-5.4(a) (a lawyer shall not share legal fees with a nonlawyer except under certain circumstances); rule 4-5.4(d) (a lawyer shall not permit his or her employer to direct or regulate the lawyer's legal judgment); rule 4-5.5(b) (a lawyer shall not assist a nonlawyer in the unlicensed practice of law); and rule 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).
The referee recommended that the following disciplinary measures be imposed on Abrams: a one-year suspension; restitution in the amount of $2,400; and payment of the Bar's costs. In recommending this discipline, the referee took into account the following factors: Abrams's age of forty-one and the fact that Abrams had been admitted to the Bar on September 29, 1997. The referee found that the following aggravating circumstances had been established: dishonest or selfish motive, pattern of misconduct, vulnerability of victim, and substantial experience in the practice of law. The referee also found that a single mitigating circumstance had been established: absence of prior discipline.
Abrams has petitioned for review, challenging the referee's recommendation that he be found guilty of violating rules 4-1.1 and 4-8.4(c). He also challenges the recommended sanction of a one-year suspension, contending that instead a suspension of between ten and ninety days would be more appropriate. And finally, he challenges the referee's recommendation that he be required to pay restitution and costs.

II. ANALYSIS

A. Factual Findings and Recommendations as to Guilt

The Court's standard of review for evaluating a referee's factual findings and recommendations as to guilt is as follows:
This Court's review of such matters is limited, and if a referee's findings of fact and conclusions concerning guilt are supported by competent, substantial evidence in the record, this Court will not *429 reweigh the evidence and substitute its judgment for that of the referee.
Fla. Bar v. Rose, 823 So.2d 727, 729 (Fla. 2002). Implicit in this standard is the requirement that the referee's factual findings must be sufficient under the applicable rules to support the recommendations as to guilt. See Fla. Bar v. Spear, 887 So.2d 1242, 1245 (Fla.2004).
In the present case, neither party contests the referee's factual findings and neither party contests his recommendations as to guilt with respect to the alleged violations of rules 4-5.3(a), 4-5.3(b), 4-5.3(c), 4-5.4(a), 4-5.4(d), and 4-5.5(b). Our review of the record shows that those findings and recommendations are supported by competent, substantial evidence. We approve the referee's factual findings and we approve his recommendations as to guilt with respect to the alleged violations of rules 4-5.3(a), 4-5.3(b), 4-5.3(c), 4-5.4(a), 4-5.4(d), and 4-5.5(b).
As for the alleged violation of rule 4-1.1, Abrams contends that the record fails to support the referee's recommendation that he be found guilty of violating this rule. We disagree. Rule 4-1.1 provides as follows:
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.
R. Regulating Fla. Bar 4-1.1.
The present record shows that Abrams was listed as the attorney of record on a status extension application submitted by Ziya and was listed as the "Managing Attorney" on the letterhead of a missive that was used by U.S. Entry in requesting alien labor certification for Ulershperger. The letter was signed, "Suzanne J. Akbas For Daniel E. Abrams, Esq." At the hearing below, immigration lawyer Elisa Brasil testified via telephonic deposition that the proper handling of asylum claims requires substantial intake by a lawyer, not a paralegal; her testimony was uncontroverted. In contrast, the present record shows that Abrams had no contact whatsoever with Ulershperger and Ziya but rather relied exclusively on Akbas's analysis of the couple's situation. Abrams has submitted no client files or other evidence showing that he did any work on their behalf. Ultimately, Ziya's and Ulershperger's lawful immigration status lapsed, and they did not discover this until almost a year later, after consulting with another lawyer. By that time, the one-year time period for seeking political asylum had long since expired. (The one-year period expired in November 2000, months after the couple had sought the assistance of U.S. Entry in the spring of 2000.) We approve the referee's recommendation that Abrams be found guilty of violating rule 4-1.1.
As for the alleged violation of rule 4-8.4(c), Abrams contends that the record fails to support the referee's recommendation that he be found guilty of violating this rule. We disagree. Rule 4-8.4(c) provides that a lawyer shall not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." See R. Regulating Fla. Bar 4-8.4(c). In the present case, the record shows that even though Akbas worked as a paralegal at U.S. Entry, she actually was the person in control of the corporation's day-to-day operations. She met with the clients, conducted the client interviews, and made the decisions as to the appropriate course of action for the clients. Abrams himself visited the U.S. Entry office only several times a month. Akbas testified that she unsuccessfully tried to get Abrams more involved in the company's operations. We conclude that Abrams's role and course of *430 conduct at U.S. Entry were inconsistent with the title "Managing Attorney," and the title constituted a clear misrepresentation of his status. We approve the referee's recommendation that Abrams be found guilty of violating rule 4-8.4(c).

B. Recommended Discipline

In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is our responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
In the present case, the recommended sanction of a one-year suspension meets the above standard. First, the recommended sanction has a reasonable basis in the Court's existing case law. The main case cited by Abrams to support a ninety-day suspension, Florida Bar v. Beach, 675 So.2d 106 (Fla.1996), is distinguishable and, in fact, supports the referee's recommended discipline. Beach had established an independent contractor relationship with a paralegal service  based on factual debriefings by the paralegals, he provided legal advice to the paralegals, who then transmitted the advice to clients. The Court described the paralegal service as a "conduit" for the giving of legal advice. Although Beach provided legal advice, that advice was transmitted to the clients without his supervision. Beach was suspended for ninety days.
The present case differs from Beach in that Abrams did not merely fail to supervise Akbas in the transmission of legal advice, but rather he provided no legal advice whatsoever. Instead, Akbas conducted client intake and formulated and dispensed legal advice. Additionally, whereas Beach did not have an attorney-client relationship with the client in that case, the referee in the present case found that Abrams had an ostensible attorney-client relationship with both Ulershperger and Ziya. And finally, whereas Beach was found guilty of committing two rule violations in that proceeding, Abrams has been found guilty of committing numerous rule violations in the present proceeding. We conclude that the recommended one-year suspension in the present case has a reasonable basis in existing case law.[1]
Second, we conclude that the recommended sanction is authorized under the Florida Standards for Imposing Lawyer Sanctions. See Fla. Stds. Imposing Law. Sancs. 4.52 ("Suspension is appropriate when a lawyer engages in an area of practice in which the lawyer knowingly lacks competence...."); 4.62 ("Suspension is appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client."); and 7.2 ("Suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.").
The presumptive sanctions under the Standards are subject to aggravating and mitigating circumstances, and a referee's findings concerning aggravating and *431 mitigating circumstances will be upheld if supported by competent, substantial evidence. See, e.g., Fla. Bar v. Spear, 887 So.2d 1242, 1247 (Fla.2004); Fla. Bar v. Barley, 831 So.2d 163, 170 (Fla.2002); Fla. Bar v. Bustamante, 662 So.2d 687, 689 (Fla.1995). In the present case, the referee found that four aggravating circumstances (dishonest or selfish motive, pattern of misconduct, vulnerability of victim, and substantial experience in the practice of law) and one mitigating circumstance (absence of prior discipline) had been established. Our review of the record shows that the referee's findings in this respect are supported by competent, substantial evidence. We agree with the referee that the lone mitigating circumstance fails to outweigh the aggravating circumstances and is insufficient to overcome the recommended sanction of a one-year suspension.
Finally, we conclude that Abrams's objection to the payment of restitution and costs is without merit. Although the Bar's complaint does not specifically request that restitution be paid to the victims in this case, it does request that Abrams be "appropriately disciplined in accordance with the provisions of the Rules Regulating the Florida Bar." Under Standard 2.8, restitution is an authorized form of discipline, and we agree with the referee that it is an appropriate sanction under the circumstances of this case. And as for the payment of costs, the Bar's statement of costs that was filed at the hearing was an "Interim Affidavit of Costs." The Bar was within its rights in timely filing a "Final Affidavit of Costs" fifteen days after the hearing. We agree that the Bar is entitled to recoup its full costs in this proceeding.

III. CONCLUSION
Based on the foregoing, we approve the referee's findings of fact, recommendations as to guilt, and recommended discipline. Daniel Everett Abrams is hereby suspended from the practice of law in Florida for a period of one year and thereafter until he proves rehabilitation. The suspension will be effective thirty days from the filing of this opinion so that Abrams can close out his practice and protect the interests of existing clients. If Abrams notifies this Court in writing that he no longer is practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Abrams shall accept no new business from the date this opinion is filed until the date the suspension is completed. Additionally, Abrams is ordered to pay restitution to Olga Ulershperger and Abdullah Ziya in the amount of $2,400.00, which payment shall be made within thirty days from the filing of this opinion. And finally, judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Daniel Everett Abrams in the amount of $2,618.10, for which sum let execution issue.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] See also Fla. Bar v. Lawless, 640 So.2d 1098 (Fla. 1994). In Lawless, the Court approved a ninety-day suspension for a lawyer who failed to adequately supervise a paralegal. Unlike Abrams, however, Lawless attempted to rectify the paralegal's mistakes.