985 So.2d 1052 (2008)
THE FLORIDA BAR, Complainant,
v.
Alan S. GLUECK, Respondent.
The Florida Bar, Complainant,
v.
Alan S. Glueck, Respondent.
Nos. SC06-1101, SC07-1.
Supreme Court of Florida.
June 26, 2008.
*1053 John F. Harkness, Jr., Executive Director and Kenneth L. Marvin, Staff Counsel, The Florida Bar, Tallahassee, FL, and Juan Carlos Arias, Bar Counsel, Fort Lauderdale, FL, The Florida Bar, for Complainant.
Kevin P. Tynan of Richardson and Tynan, P.L.C., Tamarac, FL, for Respondent.
PER CURIAM.
We have for review a referee's report recommending that Alan S. Glueck be found guilty of professional misconduct and be suspended from the practice of law for three years. We have jurisdiction. See Art. V, § 15, Fla. Const. Except as expressed below, we approve the referee's findings of fact and recommendations as to guilt, but disapprove the referee's recommended discipline. The combination of the number of clients affected, the failure to pay attention, the suborning unauthorized practice of law, and misrepresentations to the Bar during the investigation warrant disbarment.

FACTS
The Florida Bar filed complaints against Glueck, which were later consolidated into these two cases. After holding a hearing and considering exhibits entered into evidence, *1054 the referee submitted an eighty-seven page report making the following findings and recommendations.
These cases concern eight different clients and the business relationship Glueck had with a person who held herself out as Glueck's paralegal. Glueck also made misrepresentations to the Bar in his responses to some of the individual grievances filed by various clients and in a sworn statement during the Bar's investigation.
Glueck, who has been a member of the Bar since 1976, first met Elayne Bechtinger in 1998, when he was introduced to her as a conduit into the Brazilian community. When meeting to discuss the establishment of a business relationship, Glueck agreed to represent Bechtinger concerning an unlicensed practice of law (UPL) investigation of her and her company at the time, B & L Business Legal, Inc. (B & L). The UPL investigation was concluded by way of a Stipulation for Permanent Injunction, which this Court approved by order on December 24, 1998. The injunction specifically prohibited Bechtinger from:
Advising persons and entities of their rights, duties, and responsibilities under Florida Law, or Federal Law, as those laws relate to any legal matters and immigration and naturalization matters, including advising persons and entities as to various immigration benefits or statuses and the INS forms and procedures which are required to obtain these benefits and statuses, except to any limited degree permitted under the Code of Federal Regulations or other law.
Fla. Bar v. Bechtinger, No. 94,074, 727 So.2d 912 (Fla. 1998) (stipulation approved on December 24, 1998).
Thereafter, Bechtinger sold B & L to two friends who renamed the business Millennia Consulting Services, Inc. (Millennia), and Bechtinger continued to serve as an employee/manager for the business. Although Glueck's primary office had always been in Hollywood, Florida, he established an office inside the Millennia suite in Aventura, Florida. For all labor and immigration work completed at the Aventura office, Glueck only used the Aventura office mailing address. All mail concerning these cases was sent to the Aventura office. Bechtinger reviewed all the legal mail and brought it to Glueck's attention when necessary. The only telephone number or address the Aventura clients had was for the Aventura office.
Glueck entered into a partnership or business relationship with Bechtinger, wherein he provided legal services to the clients of Millennia through his law office at the Aventura location. Glueck benefited financially from this partnership by receiving services from Millennia's secretaries, bookkeepers, and billing employees. Furthermore, Glueck did not pay for rent, utilities, photocopying, or secretarial services provided by the employees of Millennia at the Aventura location. Glueck allowed Bechtinger to use his name and title in return for the legal business generated by Millennia at the Aventura location. In practice, Millennia and the Law Office of Alan S. Glueck blended together into one operation sharing the same office manager, location, employees, and control over bank accounts. Glueck only went to the Aventura location approximately every two to three weeks.
Glueck allowed Bechtinger to be in control of Millennia's legal services and his law office's day-to-day operations at the Aventura location. Bechtinger's office prepared the clients' documents based on their meetings with her and the information and documents they provided to her. Bechtinger also prepared the labor and immigration packets for Glueck's review and signature. Bechtinger and her staff *1055 met with the clients, took their inquiries, explained the law, and answered all their questions regarding immigration and labor certificate matters.
As to fees, a client would come to the Aventura office and would either execute a retainer agreement with Millennia or Glueck and fees would be paid to both without any real pattern. If money was paid to Glueck directly, these funds would be deposited in an account that he managed through the Aventura office and to which Millennia or Bechtinger had access. Glueck testified that if the fee was paid to Millennia he was to be paid a small sum (ranging from $150 to $300), with Millennia keeping the balance of the funds and paying the appropriate costs of its services, including that of Bechtinger. However, Glueck's testimony regarding the fee arrangement was not credible in light of the fact that clients of the Aventura location paid thousands of dollars in what they believed to be "legal fees." As the volume of work being performed in the Aventura office increased, Glueck lost track of how money was being collected. Glueck admitted that this financial arrangement was flawed and inappropriate.
At one point, Glueck discovered that Bechtinger had written a letter on his law firm stationery that he had no knowledge of and had not approved. Based on this incident, Glueck terminated his business relationship with Becthinger and Millennia. Accordingly, a new immigration lawyer was found for the Aventura clients and all open files were transferred, purportedly with the client's consent and at no additional charge, to the new lawyer.
Eight clients were affected by Glueck's misconduct in these cases. As to each client, Glueck failed to communicate with the client as to the status of his or her case, failed to take necessary corrective actions with regard to petitions filed on behalf of the client, took actions adverse to a client's case without consent, or abandoned the client. Due to the failure of one of the clients to attend a noticed hearing, the client was faced with deportation and later incarcerated. Glueck had not even met most of the clients until the commencement of disciplinary proceedings against him. The clients still attempted to contact Glueck after the Aventura office was closed because they were not advised that the office had closed and that their file had been transferred, or because the other lawyer attempted to charge them an additional fee. The clients were unable to contact Glueck because they were never told about his Hollywood office.
Based on the foregoing, the referee recommended that Glueck be found guilty of numerous violations of the following provisions of the Rule s Regulating the Florida Bar rules: 3-4.2 (violation of the Rules of Professional Conduct is a cause for discipline); 3-4.3 (the commission by a lawyer of an act that is unlawful or contrary to honesty and justice may constitute a cause for discipline); 4-1.1 (a lawyer shall provide competent representation to a client; competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation); 4-1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); 4-1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); 4-1.4(b) (a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); 4-5.4(c) (a lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law); 4-8.1(a) (a lawyer in connection with a disciplinary *1056 matter shall not knowingly make a false statement of material fact); 4-8.1(b) (a lawyer in connection with a disciplinary matter shall not knowingly fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter); 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another); and 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation).
Further, although the referee did not find specific rule violations with regard to the following, she considered the following in determining her disciplinary recommendation: (1) Glueck assisted a nonlawyer in violating her UPL injunction; and (2) Glueck failed to adequately supervise a nonlawyer. With regard to aggravating factors, the referee specifically found: (1) a dishonest or selfish motive; (2) a pattern of misconduct; (3) bad faith obstruction of the disciplinary proceeding; (4) vulnerability of the eight victims and the seriousness of the consequences to the victims; (5) Glueck's substantial experience in the practice of law; and (6) Glueck's indifference to making restitution. Although the referee did not specifically find mitigating factors, she states that she considered the following in making her disciplinary recommendation: absence of prior disciplinary history and the testimony of character witnesses. Based on these factors, the referee recommended a three-year suspension.
The Bar petitioned for review of the referees recommended discipline, arguing that disbarment is the appropriate sanction. Glueck cross-petitioned for review of the referees findings of fact and recommendations as to guilt and discipline.

ANALYSIS
Glueck challenges the referee's conclusion that he formed a partnership with a nonlawyer. First, he argues that he did not have a partnership with Millennia or Bechtinger. Second, Glueck argues that even if there was a partnership, the business activities did not constitute the practice of law.
To succeed in challenging a referee's findings of fact, the challenging party must establish there is a lack of evidence in the record to support such findings or that the record clearly contradicts the referee's conclusions. See Fla. Bar v. Committe, 916 So.2d 741 (Fla.2005); Fla. Bar v. Karten, 829 So.2d 883 (Fla.2002). An attorney cannot meet his burden by simply pointing to contradictory evidence when there is also competent, substantial evidence in the record to support the referee's findings. See Fla. Bar v. Committe, 916 So.2d 741 (Fla.2005); Fla. Bar v. Nowacki, 697 So.2d 828, 832 (Fla.1997).
Rule of Professional Conduct 4-5.4(c) provides: "A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law." In the instant case, Millennia would generally bill each client, include Glueck's services as line items in the bill, and pay Glueck for his services. Further, Bechtinger acted as both Glueck's paralegal and as an employee/manager for Millennia. Glueck did not pay Bechtinger directly for her services, or for rent, utilities, photocopying, or secretarial services provided by the employees of Millennia. Moreover, Glueck had a law office in the Millennia suite. Due to the sharing of at least one employee, space, and fees, the referee appropriately found, based on competent, substantial evidence, that Glueck's law office and Millennia blended together into one operation that was in essence a partnership. See Fla. Bar v. James, 478 *1057 So.2d 27 (Fla.1985) (finding a violation of a predecessor rule on facts similar to those of the instant case).
Glueck's second argument, that the alleged partnership did not conduct activities that constitute the practice of law, is without merit. The facts of the instant case demonstrate that Bechtinger decided which forms would be completed for the clients. Standing alone, the selection of legal forms usually constitutes the practice of law. See State ex rel. Indiana State Bar Ass'n v. Diaz, 838 N.E.2d 433 (Ind. 2005); Unauthorized Practice Comm., State Bar of Texas v. Cortez, 692 S.W.2d 47 (Tex.1985) (relying on Fla. Bar v. Retureta-Cabrera, 322 So.2d 28, 29 (Fla. 1975)). Thus, the referee carefully considered the evidence and appropriately concluded that Bechtinger engaged in the practice of law in violation of the UPL injunction and with Glueck's assistance. These findings are supported by competent, substantial evidence in the record and are approved.
Next, Glueck challenges the referee's findings of fact to support her recommendations as to guilt that he made misrepresentations to the Bar during its investigation. The referee's factual findings must be sufficient under the applicable rules to support the recommendations as to a lawyer's guilt. See Fla. Bar v. Abrams, 919 So.2d 425 (Fla.2006). The referee considered various letters that Glueck wrote to the Bar, which omitted the facts that he had a law office in the Millennia suite in Aventura, that Bechtinger worked for him as a paralegal in that office, and that Millennia billed clients for the services that Glueck provided. The letters attempted to veil Glueck's relationship with Millennia and Bechtinger when, in fact, there was a substantial business relationship between them. The referee's findings are supported by competent, substantial evidence in the record and are approved.
Glueck also challenges the referee's findings of fact to support her recommendations as to guilt of misconduct with regard to the individual clients. We find that the referee's findings are supported by competent substantial evidence in the record and approve all without discussion except for one which we disapprove. We disapprove the referee's finding that Glueck is responsible for a deportation order entered against a former client. The record reflects that the notice of hearing of removal proceedings was not served on Glueck and the record, which only contains the client's testimony and a retainer agreement for the completion of a particular labor petition, is insufficient to demonstrate that he represented the client at that time. Therefore, we disapprove this finding. Nonetheless, we note that due to the disorganized and flawed manner in which Glueck conducted business with his Aventura clients, it was reasonable for the client to assume, as she did at the final hearing, that Glueck represented her generally on immigration and labor matters.
Glueck further challenges the referee's failure to find mitigating factors. Specifically, Glueck argues that the referee should have found a lack of prior disciplinary history, a good faith effort to rectify the consequences of his misconduct, good character and reputation, and remorse. A referee's finding as to mitigation carries a presumption of correctness and will not be disturbed unless clearly erroneous or without support in the record. See Fla. Bar v. Arcia, 848 So.2d 296 (Fla.2003). As stated above, the referee considered Glueck's lack of a prior disciplinary history and character and reputation evidence. Further, in contrast to any good faith rectification or remorse, the referee actually found that *1058 Glueck was indifferent toward making restitution, which is evidenced by the affected clients' various unfulfilled claims for fee refunds. These findings are supported by competent, substantial evidence in the record and are approved.
The Bar challenges the referee's recommendation as to discipline. In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is our responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also Art. V, 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999). Further, the Court views cumulative misconduct more seriously than an isolated instance of misconduct. See Fla. Bar v. Carlon, 820 So.2d 891, 899 (Fla.2002). In this case, we reject the referee's recommendation as to discipline and instead conclude that disbarment is the appropriate sanction.
In Florida Bar v. Elster, 770 So.2d 1184 (Fla.2000), the Court considered four cases involving a lawyer's representation of five clients in immigration matters. In those cases, Elster failed to provide meaningful assistance to clients, collected excessive fees, made misrepresentations to clients, failed to communicate with clients, abandoned clients, and used a misleading business card. Id. at 1185-86. Two of the clients that Elster failed to competently represent were deported. Id. at 1186. Noting in particular that the clients were vulnerable because they "were unfamiliar with the legal system in this country and many of [them] were in very precarious legal situations," the Court suspended Elster for three years. Id. at 1189. In Florida Bar v. Abrams, 919 So.2d 425 (Fla.2006), the Court found a lawyer to have had an improper relationship with a corporation formed by a paralegal to provide clients with immigration legal services; two clients were harmed and the Court suspended the lawyer for one year.
In addition to committing misconduct similar to that in Elster and Abrams, Glueck affected more clients than in either of those cases, attempted to mislead the Bar during its investigation, assisted in the unlicensed practice of law, and formed an improper partnership with a nonlawyer whom he previously represented. Thus, notwithstanding the referee's erroneous determination that Glueck was responsible for a client's threatened deportation, the record supports a harsher sanction than in Elster and Abramsdisbarment. See Fla. Stds. Imposing Law. Sancs. 7.1.

CONCLUSION
Except as set forth above, we approve the referee's findings of fact and recommendations as to guilt. We disapprove the recommended discipline and instead find that disbarment is a more appropriate sanction. Accordingly, Glueck is hereby disbarred. The disbarment will be effective thirty days from the filing of this opinion so that Glueck can close out his practice and protect the interests of existing clients. If Glueck notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the disbarment effective immediately.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Alan S. Glueck in the amount of *1059 $4,264.65, for which sum let execution issue.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.