# Supreme Court of Florida

_____

No. SC20-806
_____

**THE FLORIDA BAR**,
Complainant,

vs.

**SCOT STREMS**,
Respondent.

_____

No. SC20-842
_____

**THE FLORIDA BAR**,
Complainant,

vs.

**SCOT STREMS**,
Respondent.

December 22, 2022

PER CURIAM.

In these consolidated cases, we have for review two referee reports recommending that Respondent, Scot Strems, be found guilty of professional misconduct and suspended for two years for

the gross mismanagement of his law firm (Case No. SC20-806) and receive a public reprimand for failing to communicate with a client (Case No. SC20-842).[1]

As discussed below, we approve the referee's findings of fact in both cases, with one exception. We also approve in part and disapprove in part the referee's recommendations as to guilt and findings in mitigation and aggravation in both cases. Last, we disapprove the referee's recommendations as to discipline; instead, we disbar Strems based on his cumulative misconduct.

## I. BACKGROUND

*Case No. SC20-806*

Strems was the sole partner and owner of the Strems Law Firm, P.A. (SLF), and the firm's caseload grew significantly from its inception. By 2016, the firm had only three litigation attorneys, with each managing approximately 700 cases. SLF's inadequate staffing and lack of sufficient office procedures resulted in client neglect, case dismissals, frustrated judges, and costly sanctions on a near weekly basis.

---

1. We have jurisdiction. *See* art. V, § 15, Fla. Const.

To deal with these growing pains, Strems hired a litigation managing attorney, Christopher Aguirre. Aguirre drafted policies and procedures to improve SLF's efficiency, and he kept Strems up to date on firm metrics, such as deadlines for discovery, proposals for settlement, and deposition requests. But, despite Aguirre's best efforts, SLF continued to neglect client matters and accrue court sanctions that ranged from $5,000 to $15,000 weekly.

Indeed, between 2016 and 2018, and because of SLF attorneys' willful violation of court deadlines and procedural rules, many SLF clients had their cases dismissed pursuant to *Kozel v. Ostendorf*, 629 So. 2d 817 (Fla. 1993), which established a set of factors a trial court must consider in determining whether dismissal with prejudice is warranted where an attorney has failed to adhere to filing deadlines and other procedural requirements.

In one client's case, an SLF attorney, Orlando Romero, failed to discuss a counteroffer with the client, Carlton McEkron, prior to making the offer at mediation. Further, in another case, when an SLF attorney failed to appear at a summary judgment hearing, the judge called SLF to speak with the attorney but was placed on hold for more than fifteen minutes before the judge ultimately hung up

and proceeded with the hearing without an SLF attorney. Moreover, two judges submitted affidavits describing their colleagues' frequent meetings about SLF's failure to comply with court orders and rules of procedure.

Strems knew from the *Kozel* dismissals and weekly sanctions that there were issues with the management of his firm, but he took insufficient action to rectify the situation. Rather than focus on his then-current clients and reduce the caseload SLF attorneys were expected to manage, SLF continued to accept 20 to 50 new cases per week, and Strems questioned slowdowns in accepting new cases.

Further, SLF or its clients were sanctioned under section 57.105, Florida Statutes, in some instances where SLF filed cases with unsupported claims. For example, in *Mora v. United Property & Casualty Insurance Co.*, No. 2017-010198-CA-01, order at 5 (Fla. 11th Cir. Ct. Aug. 25, 2020), in what was referred to as "a textbook example of the appropriateness of [section] 57.105, [Florida Statutes], to punish and discourage the unfettered pursuit of frivolous lawsuits," the court granted a motion for sanctions against plaintiffs and SLF, stating that they knew or should have known

that the plaintiff's claim was "so devoid of merit on the face of the record that there was little to no prospect that it would succeed." And in *Mojica v. United Property & Casualty Insurance Co.*, No. CACE 16-011382, order at 6-7 (Fla. 17th Cir. Ct. June 22, 2020), the court sanctioned Mojica after finding his deposition testimony, sworn answers to interrogatories, and responses to requests for admissions regarding repairs made to the property to be untruthful. Although the court found SLF negligent for failing to verify its client's testimony and allegations, it did not find that SLF's conduct rose to the level necessary for the court to impose sanctions.

On top of mismanaging his firm, Strems also submitted false or misleading affidavits in two cases where he had attempted to negotiate settlements. Specifically, Strems attached to an affidavit a purported email chain between himself and opposing counsel, but he failed to include seven emails from opposing counsel that directly conflicted with statements in his affidavit.

Based on these facts, the referee recommends that Strems be found guilty of violating the following provisions of the Rules Regulating The Florida Bar (Bar Rules): 4-1.4(a) (Communication – Informing Client of Status of Representation); 4-3.1 (Meritorious

Claims and Contentions); 4-3.2 (Expediting Litigation); 4-3.3(a) (Candor Toward the Tribunal – False Evidence; Duty to Disclose); 4-3.3(b) (Candor Toward the Tribunal – Criminal or Fraudulent Conduct); 4-3.4(a) (Fairness to Opposing Party and Counsel (lawyer must not unlawfully obstruct another party's access to evidence)); 4-5.1(a) (Responsibilities of Partners, Managers, and Supervisory Lawyers – Duties Concerning Adherence to Rules of Professional Conduct); 4-5.1(b) (Responsibilities of Partners, Managers, and Supervisory Lawyers – Supervisory Lawyer's Duties); 4-5.1(c) (Responsibilities of Partners, Managers, and Supervisory Lawyers – Responsibility for Rules Violations); 4-8.4(c) (Misconduct (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation)); and 4-8.4(d) (Misconduct (lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice)).

Further, the referee found the following four aggravating factors: (1) a pattern of misconduct; (2) multiple offenses; (3) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; and (4) substantial experience in the practice of law. Additionally, the referee found six

mitigating factors: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) timely good faith effort to make restitution or to rectify the consequences of the misconduct; (4) character or reputation; (5) interim rehabilitation; and (6) remorse. As a sanction, the referee recommends that Strems be suspended for two years, followed by one year of probation with special conditions, that Strems successfully complete the Bar's Ethics and Professionalism School, and that Strems pay the Bar's costs.

Strems seeks review of the referee's findings of fact; recommendations as to guilt, except as to rules 4-5.1(a) and 4-5.1(b); findings regarding aggravating and mitigating factors; and recommended sanction. The Bar also seeks review of the referee's recommended sanction and urges this Court to permanently disbar Strems.

*Case No. SC20-842*

SLF represented 84-year-old client Margaret Nowak in a claim against her insurer for damages sustained from a hurricane. She executed a contingency fee agreement that included the following provision:

2. <u>Attorney's Fees: Litigation:</u> Client hereby authorizes Attorney to file suit against Client's insurance carrier or other responsible party should they deny, reject, or under-pay Client's claim.  If the payment of attorney's fees is required to be determined by the Court, or if settlement is achieved via negotiations with the responsible party, attorney shall be entitled to receive all of such attorney's fees, including any and all contingency risk factor multipliers awarded by the Court.  If a settlement includes an amount for attorney's fees, attorney shall be entitled to receive all of its expended and/or negotiated fees.  In all cases whether there is a recovery of court-awarded fees or not, by contract or statute, the fee shall be thirty percent (30%) or the awarded amount, whichever is greater.  Pursuant to 627.428, Florida Statute, the Insurance Company is responsible to pay for the Client's attorney's fees when and if, the Client prevails against the Insurance Company.  NO RECOVERY, NO FEE.

Nowak initially informed SLF that she was willing to accept $30,000 as her prelitigation bottom line, with Nowak receiving $22,500 and SLF receiving $7,500 in attorney's fees under the contingency fee agreement (which entitled the attorney to 25% of a prelitigation recovery).  However, SLF attorney Carlos Camejo was unable to obtain an acceptable settlement offer from the insurer in prelitigation, and Nowak authorized SLF to file suit.

After suit was filed, the insurer offered to settle the case for $30,000.  When informed of this offer, Nowak stated that she would have accepted this offer if she would receive $22,500 and SLF

would receive $7,500 in attorney's fees, but SLF's attorney's fees under the fee agreement would have prevented Nowak from receiving $22,500, since suit had been filed. Thus, Camejo and Nowak agreed that Camejo would try to obtain a higher settlement offer.

At this point, Strems took over the settlement negotiations. Strems failed to follow up and see if Nowak would still accept $22,500 as her bottom line. However, the file that Strems reviewed before commencing negotiations indicated that Nowak sought a higher recovery than her prelitigation bottom line, as evidenced by Nowak's emails with Camejo stating she had since had to replace an expensive tarp on the roof several times, and a mold issue arose due to the insurer's delay in settling the case. But Strems agreed to settle the case with the insurer's counsel, Matthew Feldman, for $45,000, without Nowak's knowledge or consent. Feldman then emailed Strems to confirm that they "reached a global settlement agreement" and requested that SLF provide him with the settlement check breakdown. Strems emailed Feldman with directions to pay $22,500 to Nowak and $22,500 to SLF. Additionally, Strems wrote an internal memorandum stating that he relied on Nowak's

settlement authority of $22,500 given to Camejo, and he then negotiated $22,500 for SLF's statutory attorney's fees and costs.

The referee found that Strems failed to communicate this settlement offer to Nowak, who learned of it only when SLF sent the settlement documents two months later. Nowak objected to SLF receiving half the insurer's settlement offer in attorney's fees, believing SLF was entitled to receive no more than 30% in attorney's fees pursuant to their fee agreement, and being mistaken as to the applicability of the fee-shifting statute incorporated into the agreement. Nowak emailed SLF requesting an explanation of the settlement breakdown and informed SLF that she would not be signing the documents.

Relying on expert testimony, the referee did not find the contingency fee agreement to be illegal or prohibited, nor did she find SLF's fees to be unreasonable or clearly excessive. Thus, the referee recommends that Strems be found not guilty of violating rules 4-1.2 (Objectives and Scope of Representation), 4-1.5 (Fees and Costs for Legal Services), and 4-1.7 (Conflict of Interest; Current Clients). However, the referee recommends that Strems be

found guilty of violating rule 4-1.4 (Communication) based on his failure to communicate the settlement offer to Nowak.

In recommending discipline, the referee found three aggravating factors: (1) prior disciplinary offenses, (2) vulnerability of victim, and (3) substantial experience in the practice of law. As to mitigation, the referee found the following: (1) absence of a dishonest or selfish motive, (2) timely good faith effort to make restitution or to rectify the consequences of the misconduct, and (3) character or reputation. As a sanction, the referee recommends that Strems receive a public reprimand and pay the Bar's costs.

The Bar seeks review of the report of referee, challenging the referee's recommendations of no guilt as to rules 4-1.2, 4-1.5, and 4-1.7, findings as to aggravating and mitigating factors, and the recommended sanction. The Bar asks this Court to consider Strems' cumulative misconduct and permanently disbar him.

## II. ANALYSIS

### A. Findings of Fact and Recommendations as to Guilt

To the extent a party challenges the referee's findings of fact, the Court's review of such matters is limited, and if a referee's findings of fact are supported by competent, substantial evidence in

- 11 -

the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee. *See Fla. Bar v. Alters*, 260 So. 3d 72, 79 (Fla. 2018) (citing *Fla. Bar v. Frederick*, 756 So. 2d 79, 86 (Fla. 2000)). To the extent a party challenges the referee's recommendations as to guilt, the Court has repeatedly stated that the referee's factual findings must be sufficient under the applicable rules to support the recommendations as to guilt. *See Fla. Bar v. Patterson*, 257 So. 3d 56, 61 (Fla. 2018) (citing *Fla. Bar v. Shoureas*, 913 So. 2d 554, 557-58 (Fla. 2005)). Ultimately, the party challenging the referee's findings of fact and conclusions as to guilt has the burden to demonstrate that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions. *Fla. Bar v. Germain*, 957 So. 2d 613, 620 (Fla. 2007).

### *Case No. SC20-806*

We first address Strems' challenge to the referee's findings of fact and recommendation that he be found guilty of violating Bar Rule 4-5.1(c) (Responsibilities of Partners, Managers, and Supervisory Lawyers – Responsibility for Rules Violations). Under rule 4-5.1(c), a lawyer is responsible for another lawyer's violation of

the Bar Rules if the lawyer "orders the specific conduct or, with knowledge thereof, ratifies the conduct involved" or "is a partner or has comparable managerial authority in the law firm in which the other lawyer practices or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action."

Strems failed to responsibly manage SLF and hire enough attorneys to handle the mounting case load. Additionally, he failed to ensure that SLF lawyers complied with rules regarding reasonable diligence and promptness, which led to multiple *Kozel* dismissals. Strems' failure to take reasonable remedial action, given the substantially growing firm, was, in essence, ratification of his associates' actions. His attempts to resolve the case and office management issues were ineffective, and he continued to take on new cases rather than focus on the problems consistently plaguing SLF. Further, when the sanction orders were brought to Strems' attention, he admonished and spoke with the attorneys involved, but the sanctions did not stop. We reject Strems' argument that he should not be held vicariously responsible for his associates'

- 13 -

unproven violations because under rule 4-5.1(c), as the sole partner at SLF, Strems is responsible for what would constitute misconduct by other SLF attorneys, whether it be due to Strems' deficient firm structure or SLF's general practices. Therefore, the referee's findings of fact are supported by competent, substantial evidence and are sufficient to support the recommendation as to guilt, and we find Strems guilty of violating Bar Rule 4-5.1(c).

Next, under Bar Rule 4-3.2 (Expediting Litigation), a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client, and under Bar Rule 4-8.4(d) (Misconduct), a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice. Strems failed to have measures in place to prevent the eight *Kozel* dismissals, as well as the weekly sanction orders. Strems was aware that there was not enough staff at SLF to handle the volume of cases for more than two years, yet he failed to rectify the problem. Further, the record demonstrates that SLF had a larger pattern of consistently failing to adhere to deadlines and disregarding court orders. In several of the *Kozel* cases, for example, SLF failed to comply with numerous court orders and

violated multiple Florida Rules of Civil Procedure, and defendants had to file motions to compel due to SLF's late or insufficient discovery responses. Additionally, the affidavits of two trial court judges referred to SLF's "blatant obstruction of justice in virtually every case where he and his firm enter an appearance." In the judges' experience, SLF "engages in dilatory tactics in virtually every case" by "refus[ing] to participate in discovery, fail[ing] to attend properly notice [sic] hearings, violat[ing] court orders resulting in additional litigation and hearing time before the Court." Therefore, the referee's findings are supported by competent, substantial evidence and are sufficient to support the recommendations as to guilt. We find Strems guilty of violating both Bar Rules 4-3.2 and 4-8.4(d).

We now turn to Bar Rule 4-3.1(Meritorious Claims and Contentions), which provides that a lawyer shall not bring or defend a proceeding unless there is a basis in law and fact for doing so that is not frivolous. The referee found that SLF brought a frivolous case in *Mora,* as evidenced by the sanction order stating that plaintiffs and their counsel knew or should have known that plaintiffs' claim lacked merit. As an initial matter, we reject Strems' argument that

- 15 -

consideration of *Mora* violates his due process rights because it was not referenced in the Bar's petition and was added as an exhibit shortly before trial, because the conduct was "clearly within the scope of the Bar's accusations," and Strems was aware of "the nature and extent of the charges pending against [him]." *Fla. Bar v. Nowacki*, 697 So. 2d 828, 832 (Fla. 1997); *see also Fla. Bar v. Fredericks*, 731 So. 2d 1249 (Fla. 1999). Also, we reject his argument that *Mora* should not have been considered by the referee because it was on appeal, because referees in Bar disciplinary proceedings are "authorized to consider any evidence . . . that they deem relevant in resolving the factual question." *Fla. Bar v. Rood*, 620 So. 2d 1252, 1255 (Fla. 1993). Further, because SLF voluntarily dismissed its appeal, and the sanction order was not considered by the district court, much less reversed, Strems has not demonstrated how consideration of the case has harmed him.

With respect to Strems' claim that he was not involved in *Mora*, the record demonstrates that Strems was responsible for all settlement negotiations; thus, he presumably was involved in the case prior to suit being filed, and as sole partner of SLF, Strems was aware of all cases in the litigation stage. Moreover, after the

- 16 -

defendant in *Mora* served the section 57.105 motion for sanctions on SLF, which was brought to Strems' attention, SLF failed to dismiss the case during the safe harbor period. Accordingly, the referee's findings are supported by competent, substantial evidence and are sufficient to support the recommendation as to guilt. We find Strems guilty of violating Bar Rule 4-3.1.

Strems next challenges the findings of fact and recommendation that he be found guilty of violating Bar Rule 4-3.4(a) (Fairness to Opposing Party and Counsel), which provides in part that a lawyer must not unlawfully obstruct another party's access to evidence. The referee, relying on the orders in *Mora* and *Mojica*, found that Strems failed to provide information to opposing counsel regarding the plaintiffs' misrepresentations. As discussed above, we are unpersuaded by Strems' assertions that consideration of the cases violates his due process rights and that the referee did not find that he was involved in or had knowledge of the cases. Accordingly, the referee's findings are supported by competent, substantial evidence and sufficient to support her recommendation as to guilt, and we find Strems guilty of violating Bar Rule 4-3.4(a).

Furthermore, Bar Rule 4-3.3(a) (Candor Toward the Tribunal – False Evidence; Duty to Disclose) provides that a lawyer shall not knowingly make a false statement of fact or law to a tribunal. Additionally, Bar Rule 4-8.4(c) (Misconduct) provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. The referee found that Strems submitted false or misleading affidavits in two circuit court cases based on transcripts and orders from those cases. Contrary to Strems' claim that the referee cannot rely on judges' statements that are not incorporated into final orders, referees are authorized to consider any evidence they deem relevant to resolving factual questions. *See Rood*, 620 So. 2d at 1255. And the trial court, in one of the cases, acknowledged the doctored affidavit and Strems' removal of multiple emails from the email chain in its order granting the defendant's motion for summary judgment as well as in a separate order directing the defendant to report Strems to the Bar. Thus, because the referee's findings of fact are supported by competent, substantial evidence and are sufficient to support the recommendations as to guilt, we find Strems guilty of violating Bar Rules 4-3.3(a) and 4-8.4(c).

Additionally, Strems challenges the referee's findings and recommendation that he be found guilty of violating Bar Rule 4-3.3(b) (Candor Toward the Tribunal – Criminal or Fraudulent Conduct), which provides that a lawyer who represents a client and who knows that a person intends to engage in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures. The referee found that SLF knew that the client in *Mora* engaged or intended to engage in fraudulent conduct. Although Strems asserts he had no knowledge of the case, "[a] person's knowledge may be inferred from circumstances." R. Regulating Fla. Bar ch. 4 pmbl. Among other things, the trial judge in *Mora* found that SLF: (1) "knew that the property had preexisting and ongoing damage to the same area of the property claimed in this lawsuit"; (2) "represented Plaintiffs in a prior action and had documents in their possession at least two years before the reported date of loss" that depicted preexisting damage at the property; and (3) "concealed these documents or failed to make any reasonable inquiry of their own." *Mora v. United Prop. & Cas. Ins. Co.*, order at 4-5. Further, SLF had multiple opportunities to dismiss the case but refused despite the plaintiffs having admitted there was

preexisting damage. The motion for sanctions was presumably brought to Strems' attention, yet he failed to take corrective measures, such as directing his subordinates to dismiss the case, and SLF continued to argue before the trial judge that the damage was covered under the policy. Thus, the referee's findings that Strems failed to take remedial measures when his client made a fraudulent claim are supported by competent, substantial evidence and are sufficient to support the recommendation that he be found guilty of violating Bar Rule 4-3.3(b).

Next, Bar Rule 4-1.4(a) (Communication – Informing Client of Status of Representation) provides in relevant part that a lawyer shall reasonably consult with the client about how the client's objectives will be accomplished. The referee found Strems guilty based on the case of Carlton McEkron, where SLF attorney Romero failed to discuss a settlement counteroffer with the client. However, we disapprove the referee's recommendation that Strems be found guilty of Bar Rule 4-1.4(a).

Assuming that Romero's conduct constitutes a violation of the rule, under Bar Rule 4-5.1(c), a lawyer shall be responsible for another lawyer's violation of the rules if: (1) the lawyer orders the

specific conduct or, with knowledge thereof, ratifies the conduct; or (2) the lawyer is a partner and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action. Strems was not present at the mediation in the McEkron case, and there is no record evidence that he had knowledge of Romero's failure to consult with McEkron about the counteroffer, or that he ordered or ratified Romero's failure to consult. Thus, we disapprove the referee's recommendation and find Strems not guilty of violating Bar Rule 4-1.4(a).

*Case No. SC20-842*

The Bar first challenges the referee's recommendation that Strems be found not guilty of violating Bar Rule 4-1.2 (Objectives and Scope of Representation), which states that a lawyer must abide by a client's decisions concerning the objectives of representation and, as required by rule 4-1.4, must reasonably consult with the client as to how they are to be pursued. We agree that the referee erred in recommending that Strems be found not guilty. Nowak clearly sought a higher recovery due to additional expenses that resulted from the delay in settling the case. Strems

- 21 -

reviewed the file prior to commencing settlement negotiations and was presumably aware that the client wanted more money, but he failed to follow up with Nowak to see if her prelitigation bottom line had changed. When the insurer offered a higher settlement, Strems attempted to give Nowak her prelitigation bottom line, which did not include the additional expenses she had since incurred, and put the difference towards his attorney's fees. These facts do not support a finding that Strems abided by Nowak's objectives of representation. We therefore disapprove the referee's recommendation and find Strems guilty of violating Bar Rule 4-1.2.

Next, the Bar challenges the referee's recommendation that Strems be found not guilty of violating Bar Rules 4-1.5(a) (Fees and Costs for Legal Services – Illegal, Prohibited, or Clearly Excessive Fees and Costs)[2] and 4-1.7 (Conflict of Interest; Current Clients). Bar Rule 4-1.5(a) prohibits an attorney from entering an agreement

---

2. The Bar also asks this Court to expressly disapprove and prohibit contingency fee agreements, like that used by SLF, "that allow the lawyer to pick the fee structure that benefits him at the expense of his client." Initial Brief at 36. We reject that characterization of SLF's fee agreement, and our analysis instead focuses on Strems' application of the agreement to the facts of this case.

for, charging, or collecting an illegal, prohibited, or clearly excessive fee or cost. Bar Rule 4-1.7 prohibits a lawyer from representing a client if the representation creates a conflict of interest, especially if there is a substantial risk that the representation will be materially limited by the lawyer's own personal interests. *See* R. Regulating Fla. Bar 4-1.7(a)(2) cmt. ("The lawyer's own interests should not be permitted to have adverse effect on representation of a client.") We agree with the Bar that the referee erred in recommending that Strems be found not guilty of violating both rules while representing Nowak.

The referee relied on Strems' expert witness, who concluded that SLF's attorney's fees were not unreasonable or clearly excessive under the rule, and the fact that Nowak signed SLF's fee agreement, which communicated the basis or rate of the fees and costs, in finding that Strems' fee was not excessive under the fee agreement. And the referee found that there was no conflict of interest between Nowak and Strems. But these findings are contrary to the record evidence.

First, at the final hearing, Feldman, the attorney representing the insurer, disputed Strems' claim of a bifurcated settlement,

stating that all his settlements with SLF were resolved on a global basis and he would "never" negotiate indemnity and then negotiate attorney's fees unless there was a fee hearing. A July 30, 2018, email from Feldman to SLF stated that his client granted him additional settlement authority up to $30,000 and that he hoped to reach "a global resolution" in the case. After receiving this offer, Camejo told Nowak that he would try to obtain a higher settlement so that attorney's fees would be exclusive and Nowak would receive more, but there was no indication that Strems would only be negotiating attorney's fees.

After negotiating with Strems, Feldman emailed him to confirm that they "reached a global settlement agreement" and requested that SLF provide him with the settlement check breakdown. Feldman would not have referred to a "global settlement" and asked Strems for the settlement breakdown if they had discussed the bifurcated settlement referenced in Strems' internal memorandum. Considering all the circumstances, the referee's determination that this was a bifurcated settlement is contradictory to the record evidence.

Thus, under the terms of the contingency fee agreement, SLF was entitled to either a 30% contingency fee or a court-awarded amount. We reject Strems' argument that any amount supposedly negotiated with Feldman is equivalent to court-ordered attorney's fees. *See Fla. Bar v. Kavanaugh*, 915 So. 2d 89 (Fla. 2005). We also reject the notion that the relevant inquiry is whether a $22,500 fee would have been reasonable in light of the fee-shifting statute and the work performed on the case. Like the respondent in *Kavanaugh*, Strems attempted to collect attorney's fees exceeding an amount that is allowed under his contingency fee agreement. We therefore disapprove the referee's recommendation and find Strems guilty of violating Bar Rule 4-1.5.

Moreover, since Strems reviewed the file prior to commencing negotiations with Feldman, he was clearly on notice of Nowak's desire for a higher settlement. However, Strems sought to limit Nowak's recovery to her prelitigation bottom line, while attempting to triple his attorney's fees. Thus, the record demonstrates that there was a clear conflict of interest, with Strems unilaterally seeking to take a higher percentage of the global settlement, entirely

at his client's expense. Accordingly, we disapprove the referee's recommendation and find Strems guilty of violating Bar Rule 4-1.7.

## B. Discipline

Lastly, we address the referee's recommendations of a suspension and a public reprimand as the appropriate sanctions in these two cases. Prior to making a recommendation as to discipline, referees must consider the Standards for Imposing Lawyer Sanctions, which are subject to aggravating and mitigating circumstances, and this Court's existing case law. *See, e.g., Fla. Bar v. Abrams*, 919 So. 2d 425 (Fla. 2006); *Fla. Bar v. Temmer*, 753 So. 2d 555, 558 (Fla. 1999). In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is the Court's responsibility to order the appropriate sanction. *See Fla. Bar v. Kinsella*, 260 So. 3d 1046, 1048 (Fla. 2018); *Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989); *see also* art. V, § 15, Fla. Const.

Additionally, the Court, in its discretion, can impose a combined sanction for all cases and "determine the appropriate discipline from the totality of the conduct as though all of the charges had been presented to [the Court] in one proceeding." *Fla.*

*Bar v. Greenspahn*, 396 So. 2d 182, 183 (Fla. 1981) (considering cumulatively the alleged misconduct in two complaints). Given the severity of Strems' misconduct, we conclude that the referee's recommended disciplines are not supported, and disbarment is the appropriate sanction for these consolidated cases.

Most of the Standards relied on by the referee fail to account for the more troubling aspects of Strems' misconduct, particularly his submission of false affidavits, his inability to adequately manage SLF and prevent its ongoing failure to comply with court orders and procedural requirements, and the conflict of interest he created with Nowak. We conclude that the most relevant Standards are Standards 4.3(a)(1) ("Disbarment is appropriate when a lawyer causes serious or potentially serious injury to the client and, without the informed consent of the affected client[] . . . engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another . . . ."); 6.1(a)(1) ("Disbarment is appropriate when a lawyer . . . with the intent to deceive the court, knowingly makes a false statement or submits a false document . . . ."); 6.2(a) ("Disbarment is appropriate when a lawyer causes serious or potentially serious

interference with a legal proceeding or knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another and causes serious injury or potentially serious injury to a party."); and 7.1(b) ("Suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system."). When the Standards are considered collectively, they provide for disbarment.

Strems' argument in Case No. SC20-806 that only Standard 6.2(c), supporting a public reprimand, is applicable lacks merit, since he was not merely negligent in managing his firm. Standard 1.2(c)-(d) defines "negligence" as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow," and "knowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." Strems mishandled numerous cases that resulted in weekly court sanctions, case dismissals, and neglected clients. Rather than focusing on his then-current clients and the high caseloads his attorneys were inadequately managing, SLF continued to accept

new cases. Strems knew from the *Kozel* dismissals and weekly sanctions that there were issues with his firm, but he consciously chose not to take appropriate steps.

Further, in Case No. SC20-842, the referee only considered the provisions regarding a suspension or public reprimand under Standard 7.1 (Deceptive Conduct or Statements and Unreasonable or Improper Fees) based on her recommendation that Strems only be found guilty of violating Bar Rule 4-1.4. However, Standards 7.1(b) and 4.3(a) are applicable, because Strems knew Nowak wanted to obtain a higher net settlement when he limited her recovery to her prelitigation bottom line while tripling his attorney's fees, and it is incredulous to believe Strems did not know this constituted a conflict of interest of his own making.

We now turn to consider the referee's findings as to the mitigating and aggravating factors. "Like other factual findings, a referee's findings in mitigation and aggravation carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record. A referee's failure to find that an aggravating factor or mitigating factor applies is due the same

deference." *Fla. Bar v. Germain*, 957 So. 2d 613, 621 (Fla. 2007) (citation omitted).

In Case No. SC20-806, we disapprove the referee's finding in mitigation of a dishonest or selfish motive under Standard 3.3, and we instead find a dishonest or selfish motive as an aggravating factor under Standard 3.2. Although the referee based her finding on Strems' representation that his goal was to provide good legal counsel for clients, this finding is unsupported by the record. If Strems' goal was to provide good legal counsel, he would not have let the problems that plagued SLF continue for four years. Rather than hiring an adequate number of attorneys to handle the voluminous caseload, he continued to take on between twenty and fifty new cases each week and questioned slowdowns in the acceptance of new cases. Strems' focus on bringing in new cases rather than implementing sufficient measures to handle SLF's volume of cases demonstrates his selfish motive.

As to Case No. SC20-842, we disapprove the referee's finding in mitigation of timely good faith effort to make restitution, because nearly sixteen months passed before Strems agreed to accept 30% in attorney's fees under the fee agreement. We also disapprove the

referee's finding of absence of a dishonest or selfish motive. Although the referee found that there was no evidence that Strems would benefit personally in Nowak's matter, as the sole owner of SLF, Strems benefited personally from all fees generated by the firm. Further, his settlement negotiation of attorney's fees amounting to 50% of the settlement offer without providing a higher amount for Nowak was clearly selfish. We also disapprove the referee's failure to find in aggravation that Strems committed multiple offenses. Strems committed several distinct types of misconduct—failing to communicate the settlement offer to Nowak, attempting to collect an excessive fee, failing to abide by the client's objectives, and engaging in a conflict of interest. *See Fla. Bar v. Patterson*, 330 So. 3d 519 (Fla. 2021) (finding multiple offenses as an aggravating factor where attorney's misconduct was not limited to multiple rule violations based on a single act but several distinct types of misconduct).

In both cases, we approve the remainder of the referee's findings as to mitigation and aggravation that are not challenged by either party.

We now consider the relevant case law. In *Florida Bar v. Shoureas*, 892 So. 2d 1002 (Fla. 2004), we suspended a lawyer for three years for agreeing to represent clients, accepting fees, and then taking little or no significant action and not responding to client inquiries. Significantly, "[a]lthough the referee did not specifically find that Shoureas 'knowingly' failed to perform the agreed-upon services, the fact that she failed to respond to repeated inquiries indicates that she was aware of, or reasonably should have been aware of, her inaction." *Id.* at 1008. Additionally, in *Florida Bar v. Adorno*, 60 So. 3d 1016 (Fla. 2011), we suspended a lawyer for three years for violating Bar Rules 4-1.5, 4-1.7, and 4-8.4 based upon Adorno's negotiating to the detriment of other class members when he settled for named plaintiffs in an amount "grossly disproportionate to the value of their individual claims" and received a $2 million fee for his firm. *Id.* at 1024.

Further, *Florida Bar v. Kane*, 202 So. 3d 11 (Fla. 2016), is somewhat factually similar to Case No. SC20-842. In *Kane*, the Court disbarred three attorneys who secretly negotiated a settlement that created conflicts of interest between lawyers and clients, abandoned clients' claims in favor of greater attorney's fees

for themselves, and withheld from clients information about the settlement to further their own interests. The Court approved the referee's finding of the following aggravating factors: (1) pattern of misconduct over several years, (2) multiple offenses, (3) false statements during the disciplinary proceedings, (4) refusal to acknowledge the wrongful nature of conduct, (5) substantial experience in the practice of law, and (6) indifference to making restitution. 202 So. 3d at 26.

As in *Kane*, there are multiple aggravating factors present in Case No. SC20-842, including a dishonest or selfish motive. However, Strems' failure to disclose the settlement to Nowak was not based on secret negotiations, nor did he abandon his client's claims; rather, he created a conflict with his client by negotiating a larger settlement but limiting Nowak's recovery to her bottom line and interpreting his fee agreement as permitting him to take nearly half the offer for his attorney's fees.

We have also considered that in excessive fee cases, the Court has previously imposed ninety-one-day suspensions. *See, e.g.*, *Fla. Bar v. Carlon*, 820 So. 2d 891, 899 (Fla. 2002); *Fla. Bar v. Richardson*, 574 So. 2d 60, 63 (Fla. 1990). And in conflict-of-

- 33 -

interest cases, the Court has imposed an eighteen-month suspension and a one-year suspension. *Fla. Bar v. Herman*, 8 So. 3d 1100, 1108 (Fla. 2009); *Fla. Bar v. Patterson*, 257 So. 3d 56 (Fla. 2018). Thus, Strems' misconduct in Case No. SC20-842 alone warrants a rehabilitative suspension of at least one year.

Also, *Florida Bar v. Springer*, 873 So. 2d 317 (Fla. 2004), is instructive as to both cases. In *Springer*, an attorney was disbarred for numerous instances of gross misconduct, spanning over five years, including: (1) failing to provide competent representation; (2) failing to act with reasonable diligence; (3) failing to keep his clients reasonably informed; (4) providing falsified copies of documents to clients; (5) failing to file pleadings that led to a default judgment entered against his client; and (6) failing to comply with court orders regarding discovery.

Strems' cumulative misconduct in both cases, which ranged from 2016 to the time of his emergency suspension in 2020, is similarly worthy of disbarment. For example, Strems failed to communicate with Nowak regarding the settlement offer in her case prior to accepting the insurer's offer and then attempted to keep the amount offered that was above Nowak's bottom line as SLF's

attorney's fees. Additionally, multiple clients' cases were dismissed with prejudice pursuant to *Kozel* after SLF failed to comply with court filing deadlines and procedural requirements. Also, Strems submitted false affidavits, and SLF should have known that the clients' claims in *Mora* and *Mojica* were fraudulent. More significantly, Strems failed to fully address the underlying issues facing SLF that resulted from continuing to take on new cases weekly rather than focus on the firm's already substantial caseload.

When all the violations are considered together, the totality of Strems' misconduct warrants disbarment, which would achieve the three purposes of attorney discipline. *See Fla. Bar v. Dupee*, 160 So. 3d 838, 853 (Fla. 2015) ("The purposes of attorney discipline are: (1) to protect the public from unethical conduct without undue harshness towards the attorney; (2) to punish misconduct while encouraging reformation and rehabilitation; and (3) to deter other lawyers from engaging in similar misconduct.") First, the public needs to be protected from Strems' unethical conduct, evidenced by what appears to be SLF's practice of interpreting an ambiguously drafted fee agreement in its favor, as well as its then-ongoing failure to comply with court orders and procedures. Second, Strems must

be disciplined for his misconduct, which continued into the disciplinary proceedings. Third, other lawyers must be deterred from engaging in similar misconduct. Disbarring Strems will place other lawyers on notice that this Court will not tolerate similar misconduct.

Regarding the Bar's request that Strems be permanently disbarred, Strems' misconduct in the instant cases does not warrant such a sanction. Although he has certainly engaged in ethically questionable behavior, he has not demonstrated that he is not amenable to rehabilitation. Permanent disbarment is warranted only where an attorney's conduct indicates he or she engages in a persistent course of unrepentant and egregious misconduct and is beyond redemption. *See, e.g., Fla. Bar v. Norkin,* 183 So. 3d 1018 (Fla. 2015); *Fla. Bar v. Behm,* 41 So. 3d 136 (Fla. 2010).

### III. CONCLUSION

Accordingly, Scot Strems is hereby disbarred from the practice of law in the State of Florida. Because Strems is currently suspended, this disbarment is effective immediately. Strems shall fully comply with Rule Regulating The Florida Bar 3-5.1(h). Strems

shall also fully comply with Rule Regulating The Florida Bar 3-6.1, if applicable.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Scot Strems in the amount of $45,563.34, for which sum let execution issue.

It is so ordered.

MUÑIZ, C.J., and CANADY, POLSTON, LABARGA, COURIEL, and GROSSHANS, JJ., concur.
FRANCIS, J., did not participate.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS DISBARMENT.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, The Florida Bar, Tallahassee, Florida, Patricia Ann Toro Savitz, Staff Counsel, The Florida Bar, Tallahassee, Florida, and John D. Womack, Bar Counsel, The Florida Bar, Miami, Florida; and Chris W. Altenbernd of Banker Lopez Gassler, P.A., Tampa, Florida,

for Complainant

Benedict P. Kuehne and Michael T. Davis of Kuehne Davis Law, P.A., Miami, Florida; Kendall Coffey of Burlington, P.L., Miami, Florida; Mark Kamilar of Law Office of Mark A. Kamilar, Coconut Grove, Florida; Scott K. Tozian and Gwendolyn H. Daniel of Smith, Tozian, Daniel & Davis, P.A., Tampa, Florida; and Nelson David Diaz of LNL Law Group, PLLC, Miami, Florida,

for Respondent